UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| SAM MONET,<br><br>               Plaintiff,<br><br>    vs.<br><br>STATE OF HAWAII, GOVERNOR DAVID IGE, IN HIS OFFICIAL CAPACITY; HAWAII DEPARTMENT OF LAND AND NATURAL RESOURCES (DLNR), SUZANNE CASE, DIRECTOR IN HER OFFICIAL CAPACITY; EDWARD UNDERWOOD, DLNR ADMINISTRATOR IN HIS OFFICIAL AND INDIVIDUAL CAPACITY;  DIVISION OF CONSERVATION AND RESOURCES ENFORCEMENT (DOCARE), JASON REDULLA, DOCARE ADMINISTRATOR IN HIS OFFICIAL CAPACITY; COREY FUJIOKA, DLNR HARBOR MASTER IN HIS OFFICIAL CAPACITY; GORDON WOOD, WORKING GROUP CHAIRMAN IN HIS OFFICIAL CAPACITY AND AS AN INDIVIDUAL; SHARON MORIWAKI, HAWAII STATE SENATOR IN HER OFFICIAL CAPACITY AND AS AN INDIVIDUAL; CLARE CONNORS, ATTORNEY GENERAL, STATE OF HAWAII, IS SUED IN HER OFFICIAL CAPACITY; AND  DOE DEFENDANTS 1-20,<br><br>               Defendants. | CIV. NO. 21-00368 LEK-KJM |

**ORDER GRANTING DEFENDANTS' MOTION TO
DISMISS [001] COMPLAINT FILED AUGUST 30, 2021**

On September 20, 2021, Defendants State of Hawai`i

("the State"); Governor David Ige, in his official capacity;

Department of Land and Natural Resources ("DLNR"); Suzanne Case,

in her official capacity; Edward Underwood, in his individual and official capacities; Division of Conservation and Resources Enforcement ("DOCARE"); Jason Redulla, in his official capacity; Corey Fujioka, in his official capacity; Gordon Wood, in his individual and official capacities; Senator Sharon Moriwaki, in her individual and official capacities; and Attorney General Clare Connors, in her official capacity (all collectively "Defendants") filed their Motion to Dismiss [001] Complaint Filed August 30, 2021 ("Motion").  [Dkt. no. 17.]  The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules").  For the reasons set forth below, Defendants' Motion is granted, and the claims in this case are dismissed, with partial leave to amend, in accordance with the rulings in this Order, by **February 12, 2022.**

## BACKGROUND

For over twenty years, pro se Plaintiff Sam Monet ("Plaintiff") has been living aboard a boat docked at slip 741 in the Ala Wai Small Boat Harbor ("AWSBH").  [Complaint for Declaratory, Compensatory and Injunctive Relief, and Civil Penalties ("Complaint"), filed 8/30/21 (dkt. no. 1), at ¶ 27.] The AWSBH is a State boating facility where a limited number of boat owners are allowed to use their boat as their "principal

habitation."  See generally Haw. Rev. Stat. §§ 200-2.5, 200-2.6,
200-9(b).

I.   **Allegations Regarding the Removal of Personal Property**

Plaintiff is a native Hawaiian, and he asserts he is
entitled to exercise "traditional religious and customary
gathering rights" on lands controlled by the State, including
the AWSBH.  [Complaint at ¶¶ 24, 26.]  Plaintiff is also the
founder and director of a nonprofit organization that has a boat
docked at AWSBH slip 740.  [Id. at ¶ 27.]  According to the
Complaint, the organization's boat is "currently being outfitted
to teach native Hawaiian kids and their parents to learn
conventional sailing skills."  [Id. at ¶ 28.]  Plaintiff has
been growing native plants at slips 740 and 741, in accordance
with his native Hawaiian religious practices and cultural
beliefs and traditions.  [Id. at ¶ 32.]

According to Plaintiff, on July 14, 2021, Defendant
Edward Underwood ("Underwood") ordered Defendant Corey Fujioka
("Fujioka") to issue citations only to boats on the 700 pier,[1]
where Plaintiff's boat is docked, and the citations were "for
numerous knowingly untrue alleged violations of" the Hawai`i
Administrative Rules.  [Id. at ¶ 66.]  On July 15, 2021,

---

[1] The Complaint alleges Underwood is the Administrator of
DOBOR, and Fujioka is the AWSBH Harbormaster.  [Complaint at
¶¶ 175-76.]

Plaintiff found a notice, dated July 14, 2021, addressed "To Whom It May Concern," signed by the Harbormaster, and titled "NOTICE OF VIOLATION FOR STORAGE ON HARBOR GROUNDS," on the public sidewalk between slip 740 and slip 741 ("7/14/21 Notice").  [Id. at ¶ 142, Exh. R (dkt. no. 1-18, 7/14/21 Notice) (emphasis in original).]  Plaintiff emphasizes the 7/14/21 Notice was not addressed to him and did not indicate which slip was allegedly in violation of the Hawai`i Administrative Rules. [Complaint at ¶ 143.]  Plaintiff alleges employees of the AWSBH Harbormaster's office seized his plants, tools, and other personal items on July 21, 2021, and he argues this violated his rights under the United States Constitution, Hawai`i State Constitution, and Hawai`i case law.  [Id. at ¶¶ 36, 147.] Plaintiff made various attempts to obtain the return of his property, including contacting Defendant Attorney General Clare Connors ("Attorney General").  Plaintiff's attempts were unsuccessful, and he believes Fujioka disposed of the seized property.  [Id. at ¶¶ 149-52, 154.]

On August 4, 2021, Plaintiff received a Notice of Violation for Storage on Harbor Grounds in the mail from Fujioka ("8/4/21 Notice"), which stated the following items at slip 741 violated Haw. Admin. R. §§ 13-232-40(b) and/or 13-232-41: plants, an umbrella, buckets, storage bins, materials - including pipes and wood, and vice.  [Id. at ¶ 155, Exh. V (dkt.

4

no. 1-22, 8/4/21 Notice).]  On August 6, 2021, because the State and DLNR threatened him with fines and eviction, and because he felt intimidated and harassed, Plaintiff killed, removed, or disposed of all of the items listed in the 8/4/21 Notice, including the native plants that he uses in his religious and cultural practices.  [Complaint at ¶¶ 33, 156-57.]

According to Plaintiff, he is the only live-aboard tenant at the AWSBH who is a native Hawaiian practicing his traditional, religious, and cultural rights.  He also asserts the plants at slips 740 and 741 were not encumbering anyone's access because the spaces where the plants were located were only for use by him and his organization.  [Id. at ¶¶ 34-35.] Plaintiff alleges the State, DLNR, Underwood, Fujioka, Defendant Senator Sharon Moriwaki ("Moriwaki"), and Defendant Gordon Wood ("Wood") "conspired to harass, intimidate, threaten, and . . . otherwise force [him] to remove his traditional, native Hawaiian medicinal plants and herbs from slip 740 and 741 at AWSBH."[2] [Id. at ¶ 38.]  Plaintiff alleges one of the goals of the

---

[2] According to Plaintiff, Wood is another live-aboard tenant at the AWSBH.  [Complaint at ¶ 158.]  Plaintiff alleges Wood was recruited by Moriwaki and Underwood and appointed by Moriwaki to be the chairman of an AWSBH Working Group, which was created to patrol the AWSBH and enforce the applicable rules.  [Id. at ¶¶ 2, 52, 139.]  Plaintiff alleges all of the members of the Working Group are white, and Wood is a white supremacist.  [Id. at ¶ 140.] According to Defendants, the Working Group is a legislatively created entity.  [Mem. in Supp. of Motion at 5.]

conspiracy was to evict him from the AWSBH.  [Id. at ¶ 65.]
Plaintiff's theory is that the eviction of problematic tenants
will allow the AWSBH to be sold to the Howard Hughes
Corporation.  See, e.g., id. at ¶¶ 3, 125-27.

## II.  **Allegations Regarding the Navigation Requirement**

Until approximately 2000, all boats at the AWSBH were
required to remove their boats from their slips at least once a
year to prove that they are capable of operation in navigable
waters.  A boat could satisfy this requirement and return to its
slip after reaching the Ala Wai Canal, a navigable waterway,
governed by federal law ("Buoy Run").  The Buoy Run did not
require the boat to enter the canal.  [Id. at ¶¶ 77-78.]
According to Plaintiff, DLNR amended the appliable Hawai`i
Administrative Rules to require boats to enter the Ala Wai Canal
and proceed to the United States Coast Guard marker
approximately half a mile out of the harbor before returning to
their slips ("New Buoy Run").  Plaintiff alleges the DLNR did
not provide prior notice about the proposed rule change, nor did
it hold a hearing.  [Id. at ¶ 79.]  Plaintiff does not specify
when the rules regarding the New Buoy Run were adopted.

According to Plaintiff, the more demanding New Buoy
Run has caused "several boats" to suffer extensive damage or
total destruction.  [Id. at ¶ 81.]  Plaintiff alleges the
administrative adoption and legislative confirmation of the New

Buoy Run was part of the conspiracy to evict him from the AWSBH. [Id. at ¶ 80.]  Further, the New Buoy Run requirement forces him to put his boat, which is his dwelling, at risk, in violation of the Landlord-Tenant Code.  [Id. at ¶ 82.]

## III. **The Instant Case**

Plaintiff makes various allegations about long-standing problems at the AWSBH.  See, e.g., id. at ¶¶ 153, 168. Because Plaintiff is proceeding pro se, his Complaint must be liberally construed.  See Erickson v. Pardus,551 U.S. 89, 94 (2007) (per curiam).  Even liberally construing the Complaint, Plaintiff's allegations about the long-standing problems at the AWSBH appear to be background.  Plaintiff's claims therefore will only be construed as arising from the incidents summarized in this Order.

Plaintiff alleges the following claims: a state law fraud claim against the State, DLNR, Underwood, Fujioka, Moriwaki, and Wood, based on the alleged attempt to have him evicted as a live-aboard tenant ("Count I"); a claim against the State, DLNR, DOCARE, Underwood, Defendant Suzanne Case ("Case"),[3] and Fujioka, alleging selective enforcement of rules and regulations applicable to the AWSBH, in violation of the Fourth

---

[3] Plaintiff alleges Case is the Director of the DLNR Division of Boating and Ocean Recreation ("DOBOR").  [Complaint at ¶ 173.]

and Fourteenth Amendments to the United States Constitution ("Count II"); a claim against the State, DLNR, Underwood, Moriwaki, and Fujioka, alleging violation of Plaintiff's right to free exercise of his religion ("Count III"); a state law theft claim against the State ("Count IV"); a claim against the State, the Attorney General, DLNR, DOCARE, Underwood, Fujioka, Case, and Defendant Jason Redulla ("Redulla"),[4] alleging violations of Plaintiff's Fourteenth Amendment due process rights ("Count V"); a claim against the State, Underwood, Case, and Defendant Governor David Ige ("the Governor") challenging Haw. Rev. Stat. § 200-9(f) ("Count VI"); a claim against Underwood, Moriwaki, and Wood, alleging violation of the Civil Rights Act ("Count VII");[5] a claim against the State, DLNR, and Underwood, alleging unsafe conditions at the AWSBH, which appears to be a state law negligence claim ("Count VIII"); a claim against DLNR and Underwood, alleging violation of the Hawai`i Landlord-Tenant Code, Haw. Rev. Stat. Chapter 521 ("Count IX"); a state law breach of contract claim against the

---

[4] Plaintiff alleges Redulla is the DOBOR Enforcement Chief. [Complaint at ¶ 177.]

[5] Because Plaintiff lives aboard his boat at the AWSBH, Count VII is construed as a racial and religious discrimination claim brought pursuant to Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3619.

State, DLNR, and Underwood, alleging they breached his slip

rental contract by improperly raising his monthly rent during

the contract term ("Count X"); a claim alleging that Underwood,

Moriwaki, and Wood negligently and intentionally caused him to

suffer mental anguish, physical distress, and emotional distress

("Count XI");[6] a claim against the State, DLNR, DOCARE,

Underwood, and Fujioka for injunctive relief ("Count XII"); and

a civil conspiracy claim under the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d), against

Underwood and Moriwaki ("Count XIV").[7]

 Counts II, III, and V appear to be claims alleging

violations of the United States Constitution, brought pursuant

to 42 U.S.C. § 1983.  Although not specifically identified in

the Complaint, Count III may also be based upon: Plaintiff's

rights under article XII, section 7 of the Hawai`i Constitution;[8]

and/or the land-use provisions of the Religious Land Use and

---

[6] Count XI is construed as alleging state law claims of intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED").

[7] The Complaint does not have a Count XIII.

[8] Article XII, section 7 states: "The State reaffirms and shall protect all rights, customarily and traditionally exercised for subsistence, cultural and religious purposes and possessed by ahupua`a tenants who are descendants of native Hawaiians who inhabited the Hawaiian Islands prior to 1778, subject to the right of the State to regulate such rights."

Institutionalized Persons Act ("RLUIPA").[9]  Further, when read in

the context of the Complaint as a whole, Count VI may be

liberally construed as a § 1983 claim alleging that Haw. Rev.

Stat. § 200-9(f) violates Plaintiff's rights under the United

States Constitution.

In the instant Motion, Defendants seek the dismissal

of all of Plaintiffs' claims.

## DISCUSSION

**I.    Eleventh Amendment Immunity**

**A.    The State and State Agencies**

"The ultimate guarantee of the Eleventh Amendment is

that nonconsenting States may not be sued by private individuals

in federal court."  Bd. of Trs. of Univ. of Ala. v. Garrett, 531

U.S. 356, 363 (2001) (citation omitted).  "It is well

---

[9] Under RLUIPA:

> No government shall impose or implement a land
> use regulation in a manner that imposes a
> substantial burden on the religious exercise of a
> person, including a religious assembly or
> institution, unless the government demonstrates
> that imposition of the burden on that person,
> assembly, or institution-
>
> > (A) is in furtherance of a compelling
> > governmental interest; and
> >
> > (B) is the least restrictive means of
> > furthering that compelling governmental
> > interest.

42 U.S.C. § 2000cc(a)(1).

established that agencies of the state are immune under the Eleventh Amendment from private damages or suits for injunctive relief brought in federal court." Sato v. Orange Cnty. Dep't of Educ., 861 F.3d 923, 928 (9th Cir. 2017) (citation and quotation marks omitted); see also P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) ("Absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court." (citations and internal quotation marks omitted)).

> Although sovereign immunity bars money damages and other retrospective relief against a state or instrumentality of a state, it does not bar claims seeking prospective injunctive relief against state officials to remedy a state's ongoing violation of federal law. Ex Parte Young, 209 U.S. 123, 149-56, 28 S. Ct. 441, 52 L. Ed. 714 (1908); see also Quern v. Jordan, 440 U.S. 332, 337, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979);[10] Agua Caliente Band of Cahuilla Indians v. Hardin, 223 F.3d 1041, 1045 (9th Cir. 2000). The Young doctrine allows individuals to pursue claims against a state for prospective equitable relief, including any measures ancillary to that relief. Green v. Mansour, 474 U.S. 64, 68-71, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985). To bring such a claim, the plaintiff must identify a practice, policy, or procedure that animates the constitutional violation at issue. Hafer v. Melo, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991); Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 690 & n.55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

---

[10] Quern was overruled on other grounds by Hafer v. Melo, 502 U.S. 21 (1991). See, e.g., Gonzalez v. Cal. Highway Patrol, No. 1:20-cv-01422-DAD-JLT, 2021 WL 3287717, at *4 (E.D. Cal. Aug. 2, 2021).

11

Ariz. Students' Ass'n v. Ariz. Bd. of Regents, 824 F.3d 858, 865 (9th Cir. 2016) (some citations omitted).

Because the State has not consented to the type of federal law claims asserted in this case, the Eleventh Amendment precludes Plaintiff's federal law claims against the State, the State agency defendants, and the state official defendants, in their official capacities, unless the Young doctrine applies. Plaintiff's state law claims against them are also barred by the Eleventh Amendment because, "[a]lthough Hawaii has waived its sovereign immunity as to some state tort and statutory claims, it has done so solely with respect to state court actions." See Beckmann v. Ito, 430 F. Supp. 3d 655, 678 (D. Hawai`i 2020) (citations omitted); see also Haw. Rev. Stat. §§ 661-1, 661-2, 661-3.

DLNR is a State agency, see, e.g., Umberger v. Dep't of Land & Nat. Res., 140 Hawai`i 500, 505, 403 P.3d 277, 282 (2017), and DOCARE is a division within DLNR, see, e.g., Captain Andy's Sailing, Inc. v. Johns, 195 F. Supp. 2d 1157, 1161 (D. Hawai`i 2001).  Thus, all of Plaintiff's claims against the State, DLNR, and DOCARE must be dismissed because of Eleventh Amendment immunity.  The dismissal is with prejudice - in other words, without leave to amend those claims - because it is absolutely clear that Plaintiff cannot cure the defects in those claims.  Garity v. APWU Nat'l Lab. Org., 828 F.3d 848, 854 (9th

Cir. 2016) ("Unless it is absolutely clear that no amendment can
cure the defect, . . . a pro se litigant is entitled to notice
of the complaint's deficiencies and an opportunity to amend
prior to dismissal of the action." (quotation marks and citation
omitted)).

The portions of Plaintiff's federal law claims against
the Governor, Case, Underwood, Redulla, Fujioka, Moriwaki, and
the Attorney General, in their official capacities (collectively
"State Official Defendants"),[11] seeking damages or any other form
of retrospective relief are barred by their Eleventh Amendment
immunity and must be dismissed.  The dismissal is with prejudice
because it is absolutely clear that Plaintiff cannot cure the
defects in those claims.

Plaintiff may allege federal law claims seeking
prospective injunctive relief against the State Official
Defendants, as long as the injunction does not: 1) require the
expenditure of State funds; and 2) rely upon the measurement of
past injuries.  See K.W. ex rel. D.W. v. Armstrong, 789 F.3d
962, 974 (9th Cir. 2015) ("Equitable relief is impermissible if
it will likely require payment of state funds and is measured in
terms of a monetary loss resulting from a past breach of a legal
duty on the part of the defendant state officials." (citation

---

[11] Wood is not a state official.  See Complaint at ¶¶ 140,
179.

and internal quotation marks omitted)).  In addition, the Ninth Circuit has stated:

> For Ex parte Young to apply, a plaintiff must point to threatened or ongoing unlawful conduct by a particular governmental officer. The doctrine does not allow a plaintiff to circumvent sovereign immunity by naming some arbitrarily chosen governmental officer or an officer with only general responsibility for governmental policy.  Ex parte Young, 209 U.S. at 157, 28 S. Ct. 441 ("In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.").

Jamul Action Comm. v. Simermeyer, 974 F.3d 984, 994 (9th Cir. 2020), *cert. denied*, 142 S. Ct. 83 (2021), *reh'g denied*, 2021 WL 5763396 (U.S. Dec. 6, 2021).  Plaintiff's federal law claims against the State Official Defendants for prospective injunctive relief fail to state plausible claims for relief because Plaintiff has not sufficiently alleged the specific involvement of each official that gives rise to Plaintiff's federal claims. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (citation and internal quotation marks omitted)).  These claims must be dismissed, but the dismissal is

without prejudice because it may be possible for Plaintiff to cure this defect by amendment.

Because the Young exception does not apply to state law claims, all of Plaintiff's state law claims against the State Official Defendants are barred by their Eleventh Amendment immunity and must be dismissed.  The dismissal is with prejudice because it is absolutely clear that Plaintiff cannot cure the defects in those claims by amendment.[12]

The remaining claims are: the claims against Underwood and Moriwaki, in their individual capacities; and all claims against Wood.

## II.   **Legislative Immunity**

> Under the doctrine of legislative immunity, members of Congress and state legislators are entitled to absolute immunity from civil damages for their performance of lawmaking functions. See Tenney v. Brandhove, 341 U.S. 367, 376–77, 379, 71 S. Ct. 783, 95 L. Ed. 1019 (1951) (finding that state legislators were absolutely immune from damages when acting within the "sphere of legitimate legislative activity"). Legislative immunity, however, is not limited to officials who are members of legislative bodies. See Cleavinger v. Saxner, 474 U.S. 193, 201, 106 S. Ct. 496, 88 L. Ed. 2d 507 (1985) ("Absolute immunity flows not from rank or title or 'location within the Government,' but from the nature of the responsibilities of the individual official." (citation omitted) (quoting Butz v.

---

[12] The dismissal with prejudice of Plaintiff's claims that are subject to Eleventh Amendment immunity does not preclude Plaintiff from asserting those claims in state court.  This Court makes no findings or conclusion about the merits of such claims, if Plaintiff asserts them in state court.

> Economou, 438 U.S. 478, 511, 98 S. Ct. 2894, 57
> L. Ed. 2d 895 (1978))). "[O]fficials outside the
> legislative branch are entitled to legislative
> immunity when they perform legislative
> functions." Bogan v. Scott-Harris, 523 U.S. 44,
> 55, 118 S. Ct. 966, 140 L. Ed. 2d 79 (1998).
>
> Thus, under this functional approach, the
> Supreme Court has held that legislative immunity
> does not depend on the actor so much as the
> functional nature of the act itself. See id. at
> 54-55, 118 S. Ct. 966 ("Absolute legislative
> immunity attaches to all actions taken 'in the
> sphere of legitimate legislative activity.'"
> (quoting Tenney, 341 U.S. at 376, 71 S. Ct.
> 783)).

Jones v. Allison, 9 F.4th 1136, 1139-40 (9th Cir. 2021)

(alteration in Jones).

Plaintiff's allegations against Moriwaki relate solely to actions taken in her position as a State Senator, and Plaintiff's allegations against Wood relate solely to actions taken in his position as chairman of the AWSBH Working Group, a position that Moriwaki appointed him to in a legislatively created group. Plaintiff's claims against Wood therefore arise from Wood's conduct of legislative activity. Thus, both Moriwaki and Wood have absolute, legislative immunity from Plaintiff's claims. All of Plaintiff's claims against Moriwaki, in her individual capacity, and Wood, in his official and individual capacities, must be dismissed. The dismissal is without prejudice because it may be possible for Plaintiff to cure the defects in by amendment.

16

## III. **Service upon Underwood**

Defendants argue Plaintiff failed to comply with Fed. R. Civ. P. 4(e) when he attempted service upon Underwood. [Mem. in Supp. of Motion at 8.] According to Plaintiff, he served the Complaint and summons on Underwood on August 30, 2021 by providing the documents "a clerk of DLNR, who is designated by law to accept service of process on behalf of Ed Underwood . . . ." [Proof of Service, filed 9/9/21 (dkt. no. 14).] Rule 4(e) states, in relevant part:

> Unless federal law provides otherwise, an individual - other than a minor, an incompetent person, or a person whose waiver has been filed - may be served in a judicial district of the United States by:
>
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Rule 4(d)(1) of the Hawai`i Rules of Civil Procedure contains similar requirements for service of process on an individual. Haw. R. Civ. P. 4(d)(5) requires that service upon a State officer be made "by delivering a copy of the summons and of the complaint to such officer."  Thus, a clerk at the DLNR office is not authorized to receive service of process upon Underwood when he is sued in either his official capacity or his individual capacity.  The remaining claims against Underwood are therefore dismissed, without prejudice, for insufficient service of process.  See Fed. R. Civ. P. 12(b)(4).

However, because Defendants do not dispute that Underwood is a State official, because defense counsel has appeared on behalf of Underwood in his official and individual capacities, counsel is strongly encouraged to work with Plaintiff to assist him in effecting service of the summons and the amended complaint upon Underwood.

## IV.   **Counts IX and X**

### A.   **Violations of the Landlord-Tenant Code**

Count IX alleges a Haw. Rev. Stat. Chapter 521 claim against DLNR and Underwood.  [Complaint at ¶¶ 400-02.]  The Landlord-Tenant Code contains various remedies that a tenant may exercise against a landlord.  See generally Haw. Rev. Stat. Chapter 521, Part VI.  According to the Complaint, the landlord in Plaintiff's slip rental contract is the State.  See Complaint

at ¶ 119.  Thus, any Chapter 521 remedies available to Plaintiff are only available against the State.  All claims against the State and DLNR have been dismissed with prejudice.  See *supra* Discussion Section I.A.  Even if the portion of Count IX alleged against Underwood had not been dismissed for improper service, see *supra* Discussion Section III, this Court would have dismissed it because the Complaint does not state a plausible Chapter 521 claim against Underwood.  Because it is absolutely clear that Plaintiff cannot amend his Chapter 521 claim to state a plausible claim against Underwood, the dismissal of Count IX is with prejudice.

###   B.   **Breach of Contract**

Count X is a breach of contract claim that is only alleged against the State, DLNR, and Underwood.  [Complaint at ¶¶ 403-11.]  Because all claims against the State and DLNR have been dismissed with prejudice, the only portion of Count X that this Court will address is Plaintiff's claim against Underwood.

> Under Hawai`i law, "[t]he elements of a breach of contract claim are '(1) the contract at issue; (2) the parties to the contract; (3) whether plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by defendants; and (5) when and how defendants allegedly breached the contract.'"  Marine Lumber Co. v. Precision Moving & Storage Inc., CIVIL 16-00365 LEK-RLP, 2017 WL 1159093, at *6 (D. Hawai`i Mar. 28, 2017) (quoting Liberty Mut. Ins. Co. v. Sumo-Nan LLC, Civil No. 14-00520 DKW-KSC, 2015 WL 2449480, at *3 (D. Hawai`i May 20, 2015)).

Chavez v. Deutsche Bank Nat'l Tr. Co., CIV. NO. 17-00446 LEK-RT, 2019 WL 2330885, at *6 (D. Hawai`i May 31, 2019) (alteration in Chavez).  Even if the portion of Count X alleged against Underwood had not been dismissed for improper service, this Court would have dismissed it because the Complaint does not plead sufficient allegations to state a plausible breach of contract claim.  Further, the dismissal of Count X must be with prejudice because it is absolutely clear that it is not possible for Plaintiff to cure the defects in his breach of contract claim because Underwood is not a party to Plaintiff's slip rental contract.

## V.    **Count XII**

Count XII is a claim for injunctive relief.  However, "a claim for injunctive relief is not a standalone claim." Hancock v. Kulana Partners, LLC, Case No. 13-cv-00198-DKW-WRP, 2020 WL 5665056, at *5 (D. Hawai`i Sept. 23, 2020) (citing Amina v. WMC Finance Co., 329 F. Supp. 3d 1141, 1166 (D. Haw. 2018) ("To the extent Plaintiffs seek declaratory and injunctive relief as an independent claim, the Court follows the well-settled rule that a claim for such relief, standing alone, is not a cause of action.")), aff'd, 852 F. App'x 293 (9th Cir. 2021).  Count XII is therefore dismissed with prejudice.  In other words, Plaintiff's amended complaint must not include a

separate **count** for injunctive relief, but Plaintiff may still ask for injunctive relief among the **remedies** he seeks for the other counts that he has leave to include in his amended complaint.

## VI.   Summary and Guidance to Plaintiff

All of the claims in Plaintiff's Complaint have been dismissed.  Because some of Plaintiff's claims have been dismissed without prejudice, *i.e.*, with leave to amend, the Court provides the following analysis to guide Plaintiff.

### A.   Fraud

To the extent that Plaintiff is asserting a state law fraud claim, it is subject to a heightened pleading standard.

> Rule 9(b) imposes a heightened pleading standard on a party alleging fraud and requires the party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "Averments of fraud must be accompanied by the 'who, what, when, where and how' of the misconduct charged." Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009). . . .  Fraud claims, "in addition to pleading with particularity, also must plead plausible allegations.  That is, the pleadings must state 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged].'" Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 566 (2007)).
>
> . . . When there are multiple defendants — Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one

21

> > defendant . . . and inform each defendant
> > separately of the allegations surrounding
> > his alleged participation in the fraud.  In
> > the context of a fraud suit involving
> > multiple defendants, a plaintiff must, at a
> > minimum, identif[y] the role of [each]
> > defendant[] in the alleged fraudulent
> > scheme.
>
> > Swartz v. KPMG LLP, 476 F.3d 756, 764–65 (9th
> > Cir. 2007) (alterations in Swartz) (internal
> > quotation marks and citations omitted); see also
> > Meridian Project Sys., Inc. v. Hardin Constr.
> > Co., 404 F. Supp. 2d 1214, 1226 (E.D. Cal. 2005)
> > ("When fraud claims involve multiple defendants,
> > the complaint must satisfy Rule 9(b)
> > particularity requirements for each defendant.")
> > (citations omitted). . . .

Chavez, 2019 WL 2330885, at *5–6 (some alterations in Chavez).

> > To establish a fraud claim, a plaintiff must
> > allege the following elements: "(1) false
> > representations were made by [the defendant],
> > (2) with knowledge of their falsity (or without
> > knowledge of their truth or falsity), (3) in
> > contemplation of plaintiff's reliance upon these
> > false representations, and (4) plaintiff did rely
> > upon them." Shoppe v. Gucci Am., 14 P.3d 1049,
> > 1067 (Haw. 2000) (quoting TSA Int'l Ltd. v.
> > Shimizu Corp., 990 P.2d 713, 725 (Haw.
> > 1999)). . . .

Evans v. Gilead Scis., Inc., Case No. 20-cv-00123-DKW-KJM, 2020

WL 5189995, at *13 (D. Hawai`i Aug. 31, 2020) (some alterations

in Evans).  Even if the claims against all of the defendants

named in Count I had not been dismissed on other grounds, this

Court would have dismissed the claim without prejudice because

the Complaint does not meet the fraud pleading standards.

**B.**   **Section 1983 Claims**

"To state a claim under 42 U.S.C. § 1983, [the

p]laintiff must allege two essential elements: (1) that a right

secured by the Constitution or laws of the United States was

violated, and (2) that the alleged deprivation was committed by

a person acting under color of state law." Morelli v. Hyman,

Civ. No. 19-00088 JMS-WRP, 2020 WL 252986, at *4 (D. Hawai`i

Jan. 16, 2020) (citing West v. Atkins, 487 U.S. 42, 48 (1988);

OSU Student Alliance v. Ray, 699 F.3d 1053, 1061 (9th Cir.

2012)).

> To act under color of state law, "the party
> charged with the deprivation must be a person who
> may fairly be said to be a state actor . . .
> because he is a state official, because he has
> acted together with or has obtained significant
> aid from state officials, or because his conduct
> is otherwise chargeable to the State." Lugar v.
> Edmondson Oil Co., 457 U.S. 922, 937 (1982).
> That is, "§ 1983 excludes from its reach merely
> private conduct, no matter how discriminatory or
> wrong." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526
> U.S. 40, 50 (1999) (citation and internal
> quotation marks omitted).

Id. at *5 (alteration in Morelli).

"As a general rule, a violation of state law does not

lead to liability under § 1983." Campbell v. Burt, 141 F.3d

927, 930 (9th Cir. 1998) (citing Davis v. Scherer, 468 U.S. 183,

194, 104 S. Ct. 3012, 3019, 82 L. Ed. 2d 139 (1984); Doe v.

Connecticut Dept. of Child & Youth Services, 911 F.2d 868, 869

(2nd Cir. 1990)).

The Supreme Court has recognized, however, that state law may form the basis for a federal action for purposes of qualified immunity in some cases: "Neither federal nor state officials lose their immunity by violating the clear command of a statute or regulation - of federal or of state law - unless that statute or regulation provides the basis for the cause of action sued upon." Davis, 468 U.S. at 194 n.12, 104 S. Ct. at 3019 n.12.  One example where state law forms the basis for a federal action is the law of property: "State law may bear upon a claim under the Due Process Clause when the property interests protected by the Fourteenth Amendment are created by state law."  Id. at 193, 104 S. Ct. at 3019. . . .

Id.

Even if the claims against all of the defendants named in Plaintiff's § 1983 claims had not been dismissed on other grounds, this Court would have dismissed the § 1983 claims without prejudice because the Complaint does not include sufficient allegations to meet the foregoing standards.

## C.   **RICO Conspiracy**

To state a claim for conspiracy to violate RICO under § 1962(d), a plaintiff must allege "either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." Howard v. Am. Online, Inc., 208 F.3d 741, 751 (9th Cir. 2000).  "The illegal agreement need not be express as long as its existence can be inferred from the words, actions, or interdependence of activities and persons involved." Oki Semiconductor Co. v. Wells Fargo Bank, 298 F.3d 768, 775 (9th Cir. 2002).  Under § 1962(d), while a conspiracy defendant need not have personally committed a predicate act, or even an overt act in furtherance of the RICO conspiracy, the defendant

must be "aware of the essential nature and scope
of the enterprise and intended to participate in
it." Baumer v. Pachl, 8 F.3d 1341, 1346 (9th
Cir. 1993). "[T]he failure to adequately plead a
substantive violation of RICO precludes a claim
for conspiracy." Howard v. Am. Online Inc., 208
F.3d 741, 751 (9th Cir. 2000).

Ryan v. Salisbury, 382 F. Supp. 3d 1031, 1057 (D. Hawai`i 2019)

(alteration in Ryan). Even if the claims against all of the

defendants named in Count XIV had not been dismissed on other

grounds, this Court would have dismissed Count XIV without

prejudice because the Complaint does not include sufficient

allegations to state a plausible civil RICO conspiracy claim.

### D.   **Negligence**

Count VIII has been construed as a state law

negligence claim.

Pursuant to Hawaii law, a negligence claim
must allege the following four elements:

(1)  a duty, or obligation, recognized by
law, requiring the actor to conform to a
certain standard of conduct, for the
protection of others against unreasonable
risks;

(2)  a failure on the actor's part to
conform to the standard required;

(3)  a reasonable close casual connection
between the conduct and the resulting
injury; and,

(4) actual loss or damage resulting to the
interests of another.

Ono v. Applegate, 612 P.2d 533, 538-39 (Haw.
1980).

Moises v. Par Pac. Holdings, Inc., CIV. NO. 21-00321 HG-WRP, 2021 WL 5890657, at *4 (D. Hawai`i Dec. 13, 2021).  Even if the claims against all of the defendants named in Count VIII had not been dismissed on other grounds, this Court would have dismissed Count VIII without prejudice because the Complaint does not include sufficient allegations to state a plausible negligence claim.

   **E.    Count XI**

        Count XI has been construed as alleging state law NIED and IIED claims.  This district court has stated the elements of a NIED claim are:

>          (1)  that the defendant engaged in negligent
>          conduct;
>
>          (2)  that the plaintiff suffered serious
>          emotional distress; and,
>
>          (3)  that such negligent conduct by the
>          defendant was a legal cause of the serious
>          emotional distress.
>
>          Kauhako v. State of Hawaii Bd. Of [sic] Ed., Civ.
>          No. 13-00567 DKW-BMK, 2015 WL 5312359, *11 (D.
>          Haw. Sept. 9, 2015).
>
>          An NIED claim is merely a negligence claim
>          alleging a wholly psychic injury.  Duty and
>          breach of duty are essential elements of an NIED
>          claim and are analyzed utilizing ordinary
>          negligence principles.  Kahoohanohano v. Dep't of
>          Human Servs., 178 P.3d 538, 582 (Haw. 2008).

Ricks v. Matayoshi, CIV. NO. 16-00044 HG-KSC, 2017 WL 1025170, at *11 (D. Hawai`i Mar. 16, 2017), *aff'd sub nom.* Ricks v. Dep't

of Educ., 752 F. App'x 518 (9th Cir. 2019).  Further, under
Hawai`i law, as part of the plaintiff's requirement to prove
actual injury, he must prove "that someone was physically
injured by the defendant's conduct, be it the plaintiff himself
or herself or someone else."  Doe Parents No. 1 v. State, Dep't
of Educ., 100 Hawai`i 34, 69-70, 58 P.3d 545, 580-81 (2002)
(citation omitted).  There is an exception to this rule for
circumstances that "provide the requisite assurance that the
plaintiff's psychological distress is trustworthy and genuine,"
such as exposure to blood that is positive for the human
immunodeficiency virus or where a corpse was mishandled while it
was being prepared for a funeral, burial, or cremation.  Id. at
70, 58 P.3d at 581 (citing John & Jane Roes 1-100 v. FHP, Inc.,
91 Hawai`i 470, 476-77, 985 P.2d 661, 667-68 (1999); Guth v.
Freeland, 96 Hawai`i 147, 154-55, 28 P.3d 982, 989-90 (2001)).
Further, Haw. Rev. Stat. § 663-8.9 requires that, if "the
psychological distress arises solely out of damage to property
or to material objects," the plaintiff himself must have a
predicate physical injury.  Id. at 69, 58 P.3d at 580.

       This Court has stated:

          The elements of an IIED claim are: "1) that
       the act allegedly causing the harm was
       intentional or reckless, 2) that the act was
       outrageous, and 3) that the act caused 4) extreme
       emotional distress to another."  Young v.
       Allstate Ins. Co., 119 Hawai`i 403, 429, 198 P.3d
       666, 692 (2008).  "The term 'outrageous' has been

27

> construed to mean without cause or excuse and
> beyond all bounds of decency." <u>Enoka v. AIG Haw.</u>
> <u>Ins. Co.</u>, 109 Hawai`i 537, 559, 128 P.3d 850, 872
> (2006) (citation and internal quotation marks
> omitted)).  "The question whether the actions of
> the alleged tortfeasor are unreasonable or
> outrageous is for the court in the first
> instance, although where reasonable people may
> differ on that question it should be left to the
> jury." <u>Young</u>, 119 Hawai`i at 429, 198 P.3d at
> 692 (citation and quotation marks omitted). . . .

<u>Chavez</u>, 2019 WL 2330885, at *15.

Even if the claims against all of the defendants named

in Plaintiff's NIED and IIED claims had not been dismissed on

other grounds, this Court would have dismissed Count XI without

prejudice because the Complaint does not include sufficient

allegations to meet the foregoing standards.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to

Dismiss [001] Complaint Filed August 30, 2021, which Defendants

filed September 20, 2021, is HEREBY GRANTED.  Plaintiff's

Complaint for Declaratory, Compensatory and Injunctive Relief

and Civil Penalties, filed August 30, 2021, is DISMISSED in its

entirety.  The dismissal is WITH PREJUDICE - in other words,

without leave to amend - as to the following claims:

-all claims against the State, DLNR, and DOCARE;

-all federal law claims for damages or other forms of
     retrospective relief and all state law claims against the
     Governor, Case, Underwood, Redulla, Fujioka, Moriwaki, and
     the Attorney General, in their official capacities; and

```
-Count IX (violation of the Hawai`i Landlord-Tenant Code),
    Count X (breach of contract), and Count XII (claim for
    injunctive relief).
```

All of the other claims in the Complaint are DISMISSED WITHOUT

PREJUDICE.

Plaintiff is granted leave to file an amended

complaint by **February 12, 2022.**  The amended complaint must only

include the claims that has been dismissed without prejudice,

and Plaintiff must include all of the factual allegations and

claims that he wishes to assert in the amended complaint, even

if he previously included them in the Complaint.  In other

words, he cannot incorporate any part of the Complaint into the

amended complaint merely referring that part of the Complaint.

Plaintiff is cautioned that, if he fails to file his

amended complaint by **February 12, 2022,** the claims that were

dismissed without prejudice in this Order will be dismissed with

prejudice and this Court will direct the Clerk's Office to close

the case.  Plaintiff is also cautioned that, if he files a

timely amended complaint but fails to cure the defects in his

claims that are identified in this Order, his claims may be

dismissed with prejudice.

Because there are no remaining claims against the

State, DLNR, and DOCARE, the Clerk's Office is DIRECTED to

terminate them as parties on **January 26, 2022,** unless a timely

motion for reconsideration of this Order is filed.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 11, 2022.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**SAM MONET VS. STATE OF HAWAII, ET AL; CV 21-00368 LEK-KJM; ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [001] COMPLAINT FILED AUGUST 30, 2021**