UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| SAM MONET,<br><br>        Plaintiff,<br><br>  vs.<br><br>STATE OF HAWAII, SHARON MORIWAKI, EDWARD UNDERWOOD, GORDON WOOD, ATTORNEY GENERAL STATE OF HAWAII, UNITED STATES OF AMERICA OFFICE OF INSPECTOR GENERAL, AND  DOE DEFENDANTS 1-20,<br><br>        Defendants. | CIV. NO. 21-00368 LEK-KJM |

**ORDER GRANTING IN PART AND DENYING IN PART
THE STATE DEFENDANTS' MOTION TO DISMISS
[036] FIRST AMENDED COMPLAINT FILED FEBRUARY 11, 2022**

On February 26, 2022, Defendants State of Hawai`i ("the State"); Edward Underwood ("Underwood"), in his individual capacity; Gordon Wood ("Wood"), in his individual capacity; Senator Sharon Moriwaki ("Moriwaki"), in her individual capacity; and Attorney General Holly T. Shikada, in her official capacity ("the Attorney General," and all collectively "State Defendants") filed their Motion to Dismiss [036] First Amended Complaint Filed February 11, 2022  ("Motion").[1]  [Dkt. no. 40.]

_____

[1] The Motion was also filed on behalf of Defendants Governor David Ige ("the Governor"), in his official capacity; Department of Land and Natural Resources ("DLNR"); Suzanne Case ("Case"), in her official capacity; Underwood, in his official capacity;
(. . . continued)

Pro se Plaintiff Sam Monet ("Plaintiff") filed his "Reply Memorandum to Defendant State's Motion to Dismiss First Amended Complaint" ("Memorandum in Opposition") on February 28, 2022. [Dkt. no. 41.]  The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii.  For the reasons set forth below, the State Defendants' Motion is granted in part and denied in part.

**<u>BACKGROUND</u>**

Plaintiff initiated this action in August 2021.  <u>See</u> Complaint for Declaratory, Compensatory and Injunctive Relief, and Civil Penalties ("Complaint"), filed 8/30/21 (dkt. no. 1). The Complaint was dismissed without prejudice, with the exception of certain claims that were dismissed with prejudice. <u>See</u> Order Granting Defendants' Motion to Dismiss [001] Complaint Filed August 30, 2021, filed 1/11/22 (dkt. no. 33) ("1/11/22 Order").[2]  The following claims were dismissed with prejudice: -all claims against the State, DLNR, and DOCARE;

---

Division of Conservation and Resources Enforcement ("DOCARE"); Jason Redulla ("Redulla"), in his official capacity; Corey Fujioka ("Fujioka"), in his official capacity; Wood, in his official capacity; and Moriwaki, in her official capacity. [Motion at iii.]  However, these defendants are not named in the operative pleading.  <u>See</u> First Amended Complaint, filed 2/11/22 (dkt. no. 36), at ¶¶ 25-32 (identifying defendants).

[2] The 1/11/22 Order is also available at 2022 WL 105194.

-all federal law claims for damages or other forms of
    retrospective relief and all state law claims against the
    Governor, Case, Underwood, Redulla, Fujioka, Moriwaki, and
    the Attorney General, in their official capacities; and

-Plaintiff's claim alleging violations of the Hawai`i Landlord-
    Tenant Code, Plaintiff's breach of contract claim, and
    Plaintiff's claim for injunctive relief.

[Id. at 28-29.]

        Plaintiff filed his First Amended Complaint on

February 11, 2022.[3]  [Dkt. no. 36.]  Plaintiff added numerous

allegations to the First Amended Complaint, but the core factual

allegations which are the basis for his claims remain the same

as those in the original Complaint.  Those allegations are

summarized in the 1/11/22 Order and will not be repeated here.

The First Amended Complaint appears to allege the following

claims: a 42 U.S.C. § 1983 claim against the State, Underwood,

Moriwaki, and Wood, alleging violations of Plaintiff's due

process rights ("Count I"); a claim against Underwood, Moriwaki,

and Wood, brought pursuant to 18 U.S.C. § 242 ("Count II"); a

§ 1983 claim against the State, Underwood, Moriwaki, and Wood,

_____

        [3] Plaintiff added United States of America, Office of the
Inspector General ("OIG") as a defendant in the First Amended
Complaint.  See First Amended Complaint at ¶ 32.  Plaintiff
previously agreed to dismiss, without prejudice, his claims
against Defendant Christi A. Grimm, in her official capacity as
the Principal Deputy Inspector General, United States Department
of Health Human Services, and the United States of America.  See
Stipulation for Voluntary Dismissal of Complaint as to Defendant
Christi A. Grimm and the United States of America, filed 10/6/21
(dkt. no. 22).  However, the OIG has not appeared in this case
since the filing of the First Amended Complaint.

alleging violations of his constitutional right to the free
exercise of his religion ("Count III"); a § 1983 claim against
the State, Underwood, and Moriwaki, alleging abuse of power
("Count IV"); a § 1983 claim against the State, Underwood,
Moriwaki, and Wood, alleging violations of Plaintiff's due
process rights, arising from the conspiracy to evict Plaintiff
from the Ala Wai Small Boat Harbor ("AWSBH" and "Count V"); and
a claim challenging the validity of Haw. Rev. Stat. § 200-9(f),
which requires boats berthed at AWSBH to complete a longer trip
in navigable waters than was previously required ("Buoy Run" and
"Count VI").

        In the instant Motion, the State Defendants argue the
First Amended Complaint should be dismissed with prejudice.
Specifically, they contend: 1) Plaintiff improperly named
defendants in the First Amended Complaint that were dismissed
with prejudice in the 1/11/22 Order; 2) claims that were
dismissed without prejudice in the 1/11/22 Order, but were not
realleged in the First Amended Complaint, should now be
dismissed with prejudice; 3) Plaintiff failed to cure the
deficiencies in his claims as to Eleventh Amendment immunity and
legislative immunity; 4) the State Defendants' qualified

immunity also precludes Plaintiff's claims; and 5) Plaintiff's federal law claims are insufficiently pled.[4]

## DISCUSSION

### I.   Improperly Named Defendants

The State Defendants argue the First Amended Complaint improperly asserts claims against the State, DLNR, and DOCARE. [Mem. in Supp. of Motion at 8-9.]  The State is the only one of these entities listed, either in the caption of the First Amended Complaint or in the section listing the defendants.  See First Amended Complaint at pg. 1; id. at ¶¶ 25-34.  DLNR and DOCARE are mentioned in multiple paragraphs of the First Amended Complaint.  See, e.g., First Amended Complaint at ¶ 137. However, because the First Amended Complaint specifically identifies the parties that are the defendants in this case, and Plaintiff does not include DLNR and DOCARE among the defendants, this Court construes the allegations about DLNR and DOCARE as background supporting Plaintiff's claims against the State Defendants.  Even with a liberal construction, Plaintiff's First Amended Complaint cannot be construed as asserting claims

---

[4] The State Defendants also argue this Court should decline to exercise pendant jurisdiction over any state law claims that remain.  The only claim that could possibly be a state law claim is Count VI.  However, for the reasons stated *infra*, this Court does not construe Count VI as a state law claim.

against DLNR and DOCARE.[5]  To the extent that the State Defendants' Motion seeks the dismissal, with prejudice, of Plaintiff's claims against DLNR and DOCARE, that portion of the Motion is denied as unnecessary.

## II.  <u>Claims Not Realleged in the First Amended Complaint</u>

Although the claims were dismissed, without prejudice, on other grounds, this Court provided guidance to Plaintiff regarding his fraud claim, § 1983 claims, Racketeer Influenced and Corrupt Organizations Act ("RICO") civil conspiracy claim, negligence claim, negligent infliction of emotional distress ("NIED") claim, and intentional infliction of emotional distress ("IIED") claim.  <u>See</u> 1/11/22 Order at 21-28.  Of those claims, only Plaintiff's § 1983 claims were realleged in the First Amended Complaint.

This Court stated: "Plaintiff is cautioned that, if he fails to file his amended complaint by **February 12, 2022**, the claims that were dismissed without prejudice in this Order will be dismissed with prejudice and this Court will direct the Clerk's Office to close the case."  [<u>Id.</u> at 29 (emphasis in original).]  Because Plaintiff's First Amended Complaint does not reallege his fraud claim, RICO civil conspiracy claim,

---

[5] Because Plaintiff is proceeding pro se, his filings must be liberally construed.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (per curiam).

negligence claim, NIED claim, and IIED claim, he has failed to file an amended complaint as to those claims and has "effectively abandon[ed them]." See First Resort, Inc. v. Herrera, 860 F.3d 1263, 1274 (9th Cir. 2017) (some citations omitted) (citing Lacey v. Maricopa Cty., 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal. But for any claims voluntarily dismissed, we will consider those claims to be waived if not repled.")). Therefore, the State Defendants' Motion is granted, insofar as the original Complaint's fraud claim, RICO civil conspiracy claim, negligence claim, NIED claim, and IIED claim are now dismissed with prejudice.

**III. Whether Plaintiff Cured the Immunity Defects Identified in the 1/11/22 Order**

    **A.    Eleventh Amendment Immunity**

In its Eleventh Amendment analysis, this Court stated that, when he amended his Complaint, "Plaintiff may allege federal law claims seeking prospective injunctive relief against the State Official Defendants, as long as the injunction does not: 1) require the expenditure of State funds; and 2) rely upon the measurement of past injuries." [1/11/22 Order at 13 (citation omitted).] "The State Official Defendants" referred

to "the Governor, Case, Underwood, Redulla, Fujioka, Moriwaki, and the Attorney General, in their official capacities[.]" [Id.]

Of the State Official Defendants named in the original Complaint, only the Attorney General is named as a defendant in the First Amended Complaint.  See First Amended Complaint at pg. 1; id. at ¶¶ 25-34.  Even liberally construed, the First Amended Complaint does not assert claims against the other State Official Defendants.  To the extent that the State Defendants' Motion argues Plaintiff's claims against the Governor, Case, Underwood, Redulla, Fujioka, and Moriwaki, in their official capacities, should be dismissed with prejudice based on Eleventh Amendment immunity, that portion of the Motion is denied as unnecessary.

The only prospective injunctive relief that Plaintiff seeks in the First Amended Complaint is: in Count III, a mandatory injunction allowing him "to keep his Hawaiian medicinal plants on the dock space" associated with slips 740 and 741 at the AWSBH; [First Amended Complaint at ¶ 176; id., Exh. A (photograph depicting the prior location of Plaintiff's plants);] and, in Count VI, an injunction prohibiting the

enforcement of Haw. Rev. Stat. § 200-9(f), [First Amended

Complaint at ¶ 259].[6]  The Ninth Circuit has stated:

> Under Ex Parte Young, the state officer sued [in
> a claim seeking prospective injunctive relief]
> "must have some connection with the enforcement
> of the [allegedly unconstitutional] act."  209
> U.S. [123,] 157, 28 S. Ct. [441,] 453 [(1908)].
> This connection must be fairly direct; a
> generalized duty to enforce state law or general
> supervisory power over the persons responsible
> for enforcing the challenged provision will not
> subject an official to suit.  Long v. Van de
> Kamp, 961 F.2d 151, 152 (9th Cir. 1992); Los
> Angeles Branch NAACP [v. Los Angeles Unified Sch.
> Dist.], 714 F.2d [946,] 953 [(9th Cir. 1983)].

Los Angeles Cnty. Bar Ass'n v. Eu, 979 F.2d 697, 704 (9th Cir.

1992) (some alterations in Los Angeles Cnty. Bar Ass'n); see

also 1/11/22 Order at 10-14 (Eleventh Amendment immunity

analysis, including a discussion of Ex Parte Young).

     In support of the request for an injunction allowing

him to retain his medicinal plants, Plaintiff alleges he "was

entitled to and sought a meeting with [the Attorney General] for

a hearing on request for a religious exception for his native

Hawaiian medicinal plants at his AWSBH residence."  [First

Amended Complaint at ¶ 167.]  Liberally construing Plaintiff's

pleading, he asserts that, even if the AWSBH rules and

---

    [6] Counts II and IV both seek "fines and jail time," pursuant
to 18 U.S.C. § 242.  [First Amended Complaint at ¶¶ 166, 190.]
In addition, while not expressly stated, Plaintiff's § 1983
claims appear to seek an award of monetary damages and a
declaratory judgment against the defendants who are sued in
their individual capacity.

regulations prohibiting the storage of personal items in public areas are valid, he is entitled to an exception to those rules and regulations allowing him to retain plants that he uses for medicinal purposes.  Plaintiff asserts the plants are necessary to his Native Hawaiian cultural and religious practices, and he is able to store the plants in a manner that allows public access through those areas.  However, the mere fact that Plaintiff requested that the Attorney General grant such an exception is insufficient to plead a plausible basis for a reasonable inference that the Attorney General is a State official with some connection to the decision to grant that exception.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citations and internal quotation marks omitted)).  Similarly, Plaintiff's factual allegations are insufficient to plead a plausible basis for a reasonable inference that the Attorney General is a State official with

some connection to the to the enforcement of Haw. Rev. Stat. § 200-9(f).[7]

The Attorney General is not the proper defendant in Plaintiff's two requests for prospective injunctive relief. Thus, Plaintiff has failed to plead a plausible claim against the Attorney General.  See 1/11/22 Order at 13 (describing the claims for prospective injunctive relief that Plaintiff may allege in his amended complaint against the State Official Defendants).  The claims in the First Amended Complaint alleged against the Attorney General are therefore dismissed.  This Court next turns to the issue of whether the dismissal should be with prejudice.  See Garity v. APWU Nat'l Lab. Org., 828 F.3d 848, 854 (9th Cir. 2016) ("Unless it is absolutely clear that no amendment can cure the defect, . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." (quotation marks and citation omitted)).

The July 14, 2021 notice from the DLNR Division of Boating and Ocean Recreation ("DOBOR" and "7/14/21 Notice") was addressed "To Whom It May Concern," but Plaintiff admits that he

---

[7] Liberally construing the First Amended Complaint, Count VI asserts a § 1983 claim alleging that § 200-9(f) is invalid because it violates federal laws, including the Federal Water Pollution Control Act and 46 U.S.C. § 2302.  See First Amended Complaint at ¶ 251.

saw the notice.  See First Amended Complaint at ¶ 134.  The

7/14/21 Notice states: "You are hereby notified that you are in

violation of HAR Section 13-232-40(b) and/or Section 13-232-

41[.]"  [Id., Exh. K (emphasis omitted).[8]]  The August 4, 2021

notice that DOBOR mailed to Plaintiff ("8/4/21 Notice") cites

the same provisions.  See id., Exh. O.[9]  Those provisions are

part of Title 13 (which governs the DLNR), Subtitle 11 (which

governs Ocean Recreation and Coastal Areas), Part 1 (which is

titled "Small Boat Facilities and Provisions Generally

Applicable to All State Navigable Waters").  Haw. Admin. R.

§ 13-323-40(b) states:

> Every vessel and all other personal property and
> facilities at a small boat harbor shall be kept
> in such a condition of repair, maintenance,
> neatness, and orderliness so as not to constitute

---

[8] This Court may consider the 7/14/22 Notice without
converting the instant Motion into a motion for summary judgment
because the notice is incorporated by reference into the First
Amended Complaint.  See J.K.J. v. City of San Diego, 17 F.4th
1247, 1254 (9th Cir. 2021) (stating that, "[u]nder the
'incorporation by reference' rule of this Circuit, a court may
look beyond the pleadings without converting the [Fed. R. Civ.
P.] 12(b)(6) motion into one for summary judgment" (citation and
some internal quotation marks omitted)); Khoja v. Orexigen
Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018) (stating
a document is incorporated by reference in a complaint "if the
plaintiff refers extensively to the document or the document
forms the basis of the plaintiff's claim" (quotation marks and
citation omitted)).

[9] Exhibits F, I, J, L, M, N, and O are filed together as
docket number 36-5.  Exhibit O is at PageID #: 471.  This Court
may consider the 8/4/21 Notice without converting the instant
Motion into a motion for summary judgment because it is
incorporated by reference in the First Amended Complaint.

a common nuisance, substantial danger to person
or property, or obstruction to proper public use
and to be in conformity with these rules, the
Hawaii state boating law, the rules of the
department of health, and all other applicable
state and federal laws.

Haw. Admin. R. § 13-232-41 states:

No person shall store, place, leave, deposit, or
abandon any vessel, structure, supplies,
material, equipment, gear, object, or substance
on catwalks, piers, sidewalks, roads, parking
areas, or any other public area at a small boat
harbor, except vessels or objects may be stored:

(1)   In areas set aside by the department
for storage purposes; or

(2)   Upon prior consent by the department.

"Department" refers to DLNR.  See Haw. Admin. R. § 13-230-8.

Thus, DLNR is the entity that could consent to Plaintiff's

storage of his medicinal plants on slip 740 and/or slip 741, and

it is absolutely clear that Plaintiff cannot cure the defect in

his claim against the Attorney General for an injunction

allowing Plaintiff to store his medicinal plants on slip 740

and/or slip 741.  The dismissal of that claim against the

Attorney General must be with prejudice.

Haw. Rev. Stat. Chapter 200 is titled "Ocean

Recreation and Coastal Areas Program."  Haw. Rev. Stat. § 200-

9(f) states, in relevant part:

"Regularly navigated" means the movement of a
vessel under its own power from its assigned
mooring within a small boat harbor to beyond the
confines of the small boat harbor and entrance

13

> channel at least once in a ninety-day period.
> Vessels moored in an offshore mooring area shall
> exit the confines of the designated mooring area
> under their own power at least once in a ninety-
> day period.

Haw. Rev. Stat. § 200-9(a) states that

> only vessels in good material and operating
> condition that are regularly navigated beyond the
> confines of the small boat harbor and that are
> used for recreational activities, the landing of
> fish, or commercial vessel activities shall be
> permitted to moor, anchor, or berth at a state
> small boat harbor or use any of its facilities.

The chairperson of the Board of Land and Natural Resources is

authorized to adopt rules to further implement § 200-9.  Haw.

Rev. Stat. § 200-9(e); Haw. Rev. Stat. § 200-1 (defining

"chairperson").  Haw. Admin. R. Title 13, Subtitle 11, Part 1

are rules promulgated pursuant to that authority.  See Haw.

Admin. R. § 13-230-8 (definitions "used in these rules

promulgated pursuant to chapter 200, Hawaii Revised Statutes").

Part I is enforced as follows:

> (a)  Violation of rules, penalty.  Any vessel,
> its agent, owner, or crew that violates the rules
> of the department, . . . may be fined or deprived
> of the privilege of operating or mooring any
> vessel in state waters for a period of not more
> than thirty days, in accordance with section 200-
> 14, Hawaii Revised Statutes.

> (b)  General administrative penalties.  Except as
> otherwise provided by law, the board is
> authorized to set, charge, and collect
> administrative fines and to recover
> administrative fees and costs, including
> attorney's fees and costs, or bring legal action
> to recover administrative fines and fees and

14

> costs, including attorney's fees and costs, or
> payment for damages or for the cost to correct
> damages resulting from a violation of subtitle 8
> of title 12 or any rule adopted thereunder in
> accordance with section 200-14.5, Hawaii Revised
> Statutes.  Each day or instance of violation
> shall constitute a separate offense.

Haw. Admin. R. § 13-230-4.  Based on the language of § 200-9 and the implementing rules, it is absolutely clear that Plaintiff cannot cure the defect in claim against the Attorney General seeking an injunction prohibiting the enforcement of § 200-9(f). The dismissal of that claim must be with prejudice.

The State Defendants' Motion is granted, insofar as Plaintiff's claims in the First Amended Complaint against the Attorney General are dismissed with prejudice.  Further, having considered Plaintiff's allegations in the original Complaint, the First Amended Complaint, and his other filings, this Court concludes that it is absolutely clear that Plaintiff has no other claims for prospective injunctive relief that he can allege against the Attorney General.  The Attorney General will therefore be terminated as a party unless Plaintiff files timely motion for reconsideration of the instant Order.

**B.    <u>Legislative Immunity</u>**

In the 1/11/22 Order, Plaintiff's claims against Moriwaki and Wood were dismissed without prejudice, based on legislative immunity because:

Plaintiff's allegations against Moriwaki
relate solely to actions taken in her position as
a State Senator, and Plaintiff's allegations
against Wood relate solely to actions taken in
his position as chairman of the AWSBH Working
Group, a position that Moriwaki appointed him to
in a legislatively created group.  Plaintiff's
claims against Wood therefore arise from Wood's
conduct of legislative activity. . . .

[1/11/22 Order at 16.]

1.  **<u>Moriwaki</u>**

The new allegations that Plaintiff added in the First

Amended Complaint include allegations that Moriwaki conspired

with Wood and Underwood to violate Plaintiff's constitutional

rights.  <u>See, e.g.,</u> First Amended Complaint at ¶¶ 24, 162, 175.

However, these new allegations are similar to allegations pled

in the original Complaint.  <u>See, e.g.,</u> Complaint at ¶ 38.

Moreover, the conspiracy allegations are conclusory allegations,

and Plaintiff has not added any new factual allegations

regarding Moriwaki's actions as part of the alleged conspiracy.

Plaintiff's factual allegations in the First Amended Complaint

still relate solely to actions Moriwaki took in her position as

a State Senator.  Moriwaki has absolute, legislative immunity

from Plaintiff's claims, and Plaintiff's claims against her must

be dismissed.  Further, having considered Plaintiff's

allegations in the original Complaint, the First Amended

Complaint, and his other filings, this Court concludes that it

is absolutely clear that Plaintiff has no other factual

allegations that he can add to support his claims against
Moriwaki.  The dismissal of Plaintiff's claims against Moriwaki
is therefore with prejudice, and Moriwaki will be terminated as
a party to this case unless Plaintiff files a timely motion for
reconsideration of this Order.

> **2.  Wood**

In the 1/11/22 Order, this Court noted, based on the
factual allegations in the original Complaint, that "Plaintiff
alleges Wood was recruited by Moriwaki and Underwood and
appointed by Moriwaki to be the chairman of an AWSBH Working
Group, which was created to patrol the AWSBH and enforce the
applicable rules."  [1/22/22 Order at 5 n.2 (citing Complaint at
¶¶ 2, 52, 139).]  In the First Amended Complaint, Plaintiff
alleges "Moriwaki chose Wood" to be the chairperson.  [First
Amended Complaint at ¶ 132 (citing First Amended Complaint,
Exh. J).]  However, Exhibit J (a July 5, 2021 email from
Moriwaki to Underwood, Wood, and others) merely states that
Moriwaki was "pleased that Gordon [Wood] has offered to serve as
working group chair."  [Id., Exh. J (dkt. no. 36-5 at PageID
#: 468).]  Plaintiff also alleges there is no evidence that the
AWSBH Working Group was created by the State Legislature, [First
Amended Complaint at ¶¶ 96-98,] and it was Underwood who
appointed Wood as the chairperson of the AWSBH Working Group,
[id. at ¶ 100].  Plaintiff therefore argues Wood is not entitled

to legislatively immunity because Underwood is not a legislative official.  See id. at ¶ 101.  The factual allegations in the First Amended Complaint must be accepted as true for purposes of the State Defendants' Motion.  See Iqbal, 556 U.S. at 678 (stating "for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true").  Based on the factual allegations in the First Amended Complaint, Plaintiff has pled a plausible basis to support his position that Wood is not entitled to legislative immunity.

To the extent that that they seek dismissal of Plaintiff's claims against Wood, based on legislative immunity, the State Defendants' Motion is denied.  The denial is without prejudice to the State Defendants revisiting this issue at summary judgment or at trial, if warranted by the evidence in the record at that time.

## IV.  Whether Plaintiff's Claims Are Sufficiently Pled

### A.   Count II

In Count II, Plaintiff "seeks fines and jail time" under 18 U.S.C. § 242 against Underwood and Wood.[10]  [First

---

[10] Plaintiff also asserts Count I against Moriwaki, but it is not necessary for this Court to address whether Plaintiff's claims against Moriwaki are sufficiently pled because those claims have been dismissed with prejudice, based on legislative immunity.

Amended Complaint at pg. 21.]  Section 242 states, in relevant

part:

> Whoever, under color of any law, statute,
> ordinance, regulation, or custom, willfully
> subjects any person in any State, Territory,
> Commonwealth, Possession, or District to the
> deprivation of any rights, privileges, or
> immunities secured or protected by the
> Constitution or laws of the United States, or to
> different punishments, pains, or penalties, on
> account of such person being an alien, or by
> reason of his color, or race, than are prescribed
> for the punishment of citizens, shall be fined
> under this title or imprisoned not more than one
> year, or both . . . .

This district court has recognized that:

> "[I]n American jurisprudence . . . a private
> citizen lacks a judicially cognizable interest in
> the prosecution or nonprosecution of another."
> Linda R.S. v. Richard D., 410 U.S. 614, 619
> (1973).  Rather, whether to prosecute criminal
> statutes and bring charges are decisions left to
> the discretion of a prosecutor.  United States v.
> Batchelder, 442 U.S. 114, 124 (1979); see also,
> e.g., Kapu v. Attorney Gen., Haw., 2017 WL
> 4479252, at *5 (D. Haw. Oct. 6, 2017)
> (reiterating that private individuals have no
> authority to issue a criminal indictment for a
> violation of a criminal statute); Retanan v. Cal.
> Dep't of Corr. & Rehab., 2012 WL 1833888, at *5
> (E.D. Cal. May 18, 2012) ("[I]t is well-
> established that a private individual has no
> constitutional right and standing to bring a
> criminal complaint against another individual.")
> (citations omitted).

> Moreover, individuals rarely have an implied
> private cause of action for violations of
> criminal statutes.  See, e.g., Chrysler Corp. v.
> Brown, 441 U.S. 281, 316 (1979) (reiterating that
> a private right of action under a criminal
> statute is rarely implied); Aldabe v. Aldabe, 616
> F.2d 1089, 1092 (9th Cir. 1980) (holding that

"[t]hese criminal provisions [18 U.S.C. §§ 241 and 242] . . . provide no basis for civil liability") (citations omitted); <u>Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver,</u> 511 U.S. 164, 190 (1994) ("[W]e refuse[] to infer a private right of action from 'a bare criminal statute' . . . [a]nd we have not suggested that a private right of action exists for all injuries caused by violations of criminal prohibitions.") (quoting <u>Cort v. Ash</u>, 422 U.S. 66, 80 (1975)).

<u>Tuomela v. Waldorf-Astoria Grand Wailea Hotel</u>, Civ. No. 20-00117 JMS-RT, 2020 WL 3490027, at *2 (D. Hawai`i. June 26, 2020) (alterations in <u>Tuomela</u>).  Because there is no civil remedy available for violations of § 242, and because Plaintiff cannot compel a criminal prosecution for violation of § 242, Count II, and all portions of Plaintiff's other counts seeking relief under § 242, must be dismissed.  The dismissal is with prejudice because it is absolutely clear that Plaintiff cannot cure the defects in his § 242 claims.  The State Defendants' Motion is granted insofar as all of Plaintiff's § 242 claims against Underwood and Wood are dismissed with prejudice.

### B.  **Section 1983 Claims**

The requirements to plead a § 1983 claim are set forth in the 1/11/22 Order and will not be repeated here.  <u>See</u> 1/11/22 Order at 23.

### 1.  **Counts I and V**

Count I alleges a due process claim arising from the confiscation, and subsequent coerced removal, of Plaintiff's

personal items, and Count V alleges a due process claim arising

from the alleged conspiracy to evict him from the AWSBH.

> The Due Process Clause "forbids the
> governmental deprivation of substantive rights
> without constitutionally adequate procedure."
> Shanks v. Dressel, 540 F.3d 1082, 1090-91 (9th
> Cir. 2008). "A section 1983 claim based upon
> procedural due process . . . has three elements:
> (1) a liberty or property interest protected by
> the Constitution; (2) a deprivation of the
> interest by the government; (3) lack of process."
> Portman v. County of Santa Clara, 995 F.2d 898,
> 904 (9th Cir. 1993).

Armstrong v. Reynolds, 22 F.4th 1058, 1066 (9th Cir. 2022).

"The touchstone of procedural due process is notice and an

opportunity to be heard."  Miranda v. City of Casa Grande, 15

F.4th 1219, 1225 (9th Cir. 2021) (citing Dusenbery v. United

States, 534 U.S. 161, 167, 122 S. Ct. 694, 151 L. Ed. 2d 597

(2002)).

### a.   Conspiracy to Evict Plaintiff

Count V is premised upon Plaintiff's belief that

Defendants have taken various actions as part of a conspiracy to

either create a basis to actually, or constructively, evict him

from the AWSBH.  However, "procedural due process claims ripen

only when it is clear that a distinct deprivation of a

constitutionally protected interest in liberty or property has

already occurred, thereby warranting a federal court's

consideration of the question of whether the deprived party

received the process to which it was due."  Guatay Christian

Fellowship v. Cnty. of San Diego, 670 F.3d 957, 984 (9th Cir. 2011).  Count V is not ripe because Plaintiff has not been deprived of any property interest, *i.e.*, he has not been actually or constructively evicted.  Count V must therefore be dismissed.  It may be possible for Plaintiff to cure this defect in Count V if a deprivation of Plaintiff's constitutionally protected property interests has occurred since the filing of the First Amended Complaint.

### b.   **July 21, 2021 Seizure**

In considering the Motion's request to dismiss Count I, this Court accepts as true Plaintiff's allegations that his personal items were seized from slip 741 by employees of the AWSBH harbor master's office on July 21, 2021.  See First Amended Complaint at ¶ 139.  This Court concludes, for purposes of the instant Motion, that Plaintiff has pled sufficient factual allegations that, if proven, would establish a deprivation of Plaintiff's constitutionally protected property interests by the State as to the portion of Count I based on the July 21, 2021 seizure.  Thus, the only remaining issue is whether Plaintiff has sufficiently pled a lack of adequate process.

> In order to determine whether the provided procedural protections are adequate, courts weigh the three factors announced in Mathews v. Eldridge:

> First, the private interest that will be
> affected by the official action; second, the
> risk of an erroneous deprivation of such
> interest through the procedures used, and
> the probable value, if any, of additional or
> substitute procedural safeguards; and
> finally, the Government's interest,
> including the function involved and the
> fiscal and administrative burdens that the
> additional or substitute procedural
> requirement would entail.

> 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L. Ed.
> 2d 18 (1976).

> Although application of these factors
> generally "requires some kind of a hearing before
> the State deprives a person of liberty or
> property," Zinermon v. Burch, 494 U.S. 113, 127,
> 110 S. Ct. 975, 984, 108 L. Ed. 2d 100 (1990)
> (citations omitted), application of the Mathews
> factors creates "numerous exceptions to this
> general rule." Clement v. City of Glendale, 518
> F.3d 1090, 1093–94 (9th Cir. 2008). For example,
> a pre-deprivation notice and hearing may not be
> required in an emergency, or when notice would
> defeat the purpose of a seizure. Id. (citing
> Zinermon, 494 U.S. at 132, 110 S. Ct. 975 and
> Mathews, 424 U.S. at 335, 96 S. Ct. 893).

Hollandsworth v. City & Cnty. of Honolulu, 489 F. Supp. 3d 1085,

1092–93 (D. Hawai`i 2020).

For purposes of the instant Motion, this Court accepts

as true Plaintiff's allegations that that 7/14/21 Notice was not

specifically addressed to him and was found "lying on the public

sidewalk between slip 740 and 741." See First Amended Complaint

at ¶ 134. This Court also accepts as true Plaintiff's

allegations that, prior to the July 21, 2021 seizure, Plaintiff

and Catherine Johnson ("Johnson") - the co-director of the non-

profit organization that maintains a boat at slip 740 -
attempted to obtain more information about the 7/14/21 Notice,
but they received no response to their inquiries.  See id. at
¶¶ 14, 136-38; id., Exh. L (email dated 7/15/21 from Plaintiff
to Underwood and others).  Further, Plaintiff alleges the
seizure was carried out by a State employee, at Underwood's
direction.  After the seizure, Plaintiff wrote to the Attorney
General to demand the return of his personal property, and
Plaintiff made a police report, but his property was not
returned.  See First Amended Complaint at ¶¶ 140-44.  This Court
therefore concludes that Plaintiff has pled sufficient factual
allegations to support his position that he was denied adequate
process by Underwood as to the July 21, 2021 seizure.

Plaintiff, however, has not pled sufficient factual
allegations to support his position that he was denied adequate
process by Wood as to the July 21, 2021 seizure.  This portion
of Count I must be dismissed, but is arguably possible for
Plaintiff to cure the defects in this claim by amendment.

c.   **8/4/21 Notice**

For purposes of the instant Motion, this Court accepts
as true Plaintiff's allegations that he received the 8/4/21
Notice in the mail and, after receiving it, he removed and
disposed of personal items, including native plants, from
slips 740 and 741.  See id. at ¶¶ 147-49.  Plaintiff's position

24

appears to be that, because of the July 21, 2021 seizure and
other related events, he felt coerced into removing and
disposing of his items because he believed that he would be
evicted from the AWSBH if he did not do so.  See id. at ¶¶ 148,
172.  Even if Plaintiff's coerced removal and disposal of his
items could be construed as a deprivation by the State,
Plaintiff does not allege that he made any attempts to challenge
or respond to the 8/4/21 Notice before removing and disposing of
his items.  Cf. id., Exh. O (8/4/21 Notice (dkt. no. 36-5 at
PageID #: 471) (stating Plaintiff could contact DOBOR to request
an extension of time to comply with the notice)).

Count I therefore fails to state a plausible § 1983
due process claim based on the 8/4/21 Notice and must be
dismissed.  However, it may be possible for Plaintiff to cure
the defects in this portion of Count I by amendment.

### 2.   Count III

Liberally construed, Count III alleges the issuance of
the 7/14/21 Notice and the 8/4/21 Notice and the July 21, 2021
seizure violated Plaintiff's First Amendment right to the free
exercise of his religion because some of the items at issue in
the notices were items that Plaintiff used in the practice of
his Native Hawaiian religion.

> The First Amendment provides that, "Congress
> shall make no law respecting an establishment of
> religion, or prohibiting the free exercise

thereof . . . ."  The First Amendment is applicable to the states through the Fourteenth Amendment.  See Everson v. Bd. of Educ., 330 U.S. 1, 15, 67 S. Ct. 504, 91 L. Ed. 711 (1947).  The First Amendment's protection of the freedom of religion is considered to be embodied in two clauses: the "Establishment Clause" and the "Free Exercise Clause." . . .  The Free Exercise Clause guards an individual's practice of her own religion against restraint or invasion by the Government.  See Sch. Dist. of Abington Twp., Pa. v. Schempp, 374 U.S. 203, 222–23, 83 S. Ct. 1560, 10 L. Ed. 2d 844 (1963). . . .

          . . . .

          In order to establish a violation of the Free Exercise Clause, a plaintiff must establish that the challenged conduct resulted in an impairment of the plaintiff's free exercise of genuinely held beliefs.  See United States v. Lee, 455 U.S. 252, 256–57, 102 S. Ct. 1051, 71 L. Ed. 2d 127 (1982).  However, in evaluating such a claim, we must be mindful that "every person cannot be shielded from all burdens incident to exercising every aspect of the right to practice religious beliefs."  Id. at 261, 102 S. Ct. 1051. Indeed, "the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'"  Emp't Div. v. Smith, 494 U.S. 872, 879, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990); see also Christian Legal Soc. Chapter of the Univ. of Cal. Hastings Coll. of Law v. Martinez, 561 U.S. 661, 130 S. Ct. 2971, 2995 n.27, 177 L. Ed. 2d 838 (2010) ("[T]he Free Exercise Clause does not inhibit enforcement of otherwise valid regulations of general application that incidentally burden religious conduct.").

Williams v. California, 764 F.3d 1002, 1011–12 (9th Cir. 2014)

(some alterations in Williams).

                              26

For purposes of the instant Motion, this Court accepts as true Plaintiff's allegations that: he is a practitioner of a Native Hawaiian religion; and the items at issue in the notices included native plants and other items that he used as part of his religious practices.  See, e.g., First Amended Complaint at ¶¶ 10-15.  Thus, Plaintiff has adequately alleged that the seizure of the plants and other items on July 21, 2021 and Plaintiff's coerced disposal of the plants and other items on August 6, 2021 impaired his genuinely held religious beliefs. See Lee, 455 U.S. at 256-57.

The regulations that the notices asserted Plaintiff was violating - Haw. Admin. R. §§ 13-232-40(b) and 13-232-41 - are generally applicable and facially neutral, and Plaintiff does not allege the regulations are invalid on their face.  As previously noted, Plaintiff seeks a prospective injunction allowing him to keep Native Hawaiian medicinal plants at slips 740 and 741, as long as he maintains them in a manner that does not impede public access.  See First Amended Complaint at ¶ 176; id., Exh. A.  Liberally construing his pleading as a whole, Plaintiff seeks a prospective injunction granting him a religious exception to the applicable regulations and allowing him to retain religious and medicinal plans, as well as other religious items, at slips 740 and 741.  He also alleges he previously requested such an exception from the Attorney

27

General, but the request was ignored.  See First Amended
Complaint at ¶¶ 167-68.

This Court has concluded, for purposes of the instant
Motion, that DLNR is the State entity that could grant Plaintiff
an exception to the applicable regulations and allow him to
retain his medicinal and religious item on slips 740 and 741.
See supra Discussion § III.A.  Based on the allegations in the
First Amended Complaint, including the documents that this Court
concludes are incorporated by reference into the First Amended
Complaint, Underwood is the Administrator of DOBOR, DOBOR is a
division within DLNR, and DOBOR had the authority to grant
Plaintiff extensions of time to respond to the 7/14/21 Notice
and the 8/4/21 Notice.  However, even if DOBOR had the authority
to grant extensions to avoid enforcement actions, that is
insufficient to support Plaintiff's position that Underwood, as
the Administrator of DOBOR, has the authority to implement an
injunction granting Plaintiff a religious exception to Haw.
Admin. R. §§ 13-232-40(b) and 13-232-41, and to any other
applicable provisions.  To the extent that Count III seeks a
prospective injunction against Underwood requiring him to grant
Plaintiff a religious exception, Plaintiff fails to state a
plausible claim.  That portion of Count III must be dismissed,
but it is arguably possible for Plaintiff to cure the defect in
that portion of Count III by amendment.

28

To the extent that Count III seeks monetary damages against Underwood, based on the failure to grant Plaintiff's request for a religious exception, Plaintiff does not plead sufficient factual allegations to support that claim. Even if Underwood has the authority to grant such an exception, Plaintiff does not allege that he made such a request to Underwood.[11]  Plaintiff alleges he made the request to the Attorney General, but Plaintiff does not allege that the State had a duty to transmit that request to Underwood. Thus, the portion of Count III seeking monetary damages against Underwood also fails to state a plausible claim, but it is arguably possible for Plaintiff to cure the defect in that portion of Count III by amendment.

To the extent that Plaintiff asserts Count III against Wood, Plaintiff fails to plead any factual allegations supporting his position that Wood was involved in the denial of his request for a religious exception. Further, Plaintiff does not plead any factual allegations supporting his position that Wood would be involved in the granting of such an exception, if this Court awarded the prospective injunctive relief that

---

[11] Plaintiff may argue one or more of the documents he attached as exhibits to the First Amended Complaint show that he made a request for a religious exemption to Underwood. However, this Court does not find that any documents, besides the 7/14/21 Notice and the 8/4/21 Notice, are incorporated by reference into the First Amended Complaint.

Plaintiff seeks in Count III.  The portion of Count II alleged against Wood fails to state a plausible claim and must be dismissed.  In light of Plaintiff's allegations regarding Wood's role in the relevant events, this Court finds that it is absolutely clear that Plaintiff cannot cure the defects in his Count III claim against Wood by amendment.  The portion of Count III asserted against Wood is therefore dismissed with prejudice.

### 3.   Count IV

Count IV alleges Underwood abused the power of his office by conspiring to remove Plaintiff, and other live-aboard tenants, from the AWSBH and to prevent other applicants from obtaining live-aboard permits.  [First Amended Complaint at ¶¶ 177-84.]  Plaintiff's theory is that the issuance of the 7/14/21 Notice, the July 21, 2021 seizure, and the 8/4/21 Notice were part of Underwood's scheme to force Plaintiff from the AWSBH.  Liberally construed, Count IV may be a malicious abuse of process claim.

This Court has noted that it is unclear whether an abuse of process claim is cognizable under § 1983 and, if so, what the elements of the claim are.  See Hall v. City & Cnty. of Honolulu, CIV. NO. 21-00248 LEK-KJM, 2022 WL 1229965, at *7-8 (D. Hawai`i Apr. 26, 2022).  This district court has noted that "[m]ost federal courts to consider the issue have concluded that

30

there is no constitutional violation for abuse of process under Section 1983 without conscience-shocking, egregious wrongdoing." Char v. Simeona, CIV. NO. 18-00303 DKW-KJM, 2018 WL 5815519, at *4 (D. Hawai`i Nov. 6, 2018).  However, this Court recognized that there is some support for the proposition that a § 1983 abuse of process claim would have the same elements as the abuse of process tort under Hawai`i law - "'(1) an ulterior purpose and (2) a wilful act in the use of the process which is not proper in the regular conduct of the proceeding.'"  See Hall, 2022 WL 1229965, at *7 (quoting Young v. Allstate Ins. Co., 119 Hawai`i 403, 412, 198 P.3d 666, 675 (2008)).

        This Court need not resolve these issues at this stage of the instant case because, as currently pled, Plaintiff's claim against Underwood in Count IV is duplicative of his claims against Underwood in Count I, and does not allege the additional elements - under either definition of the claim - necessary to plead a § 1983 abuse of process claim.  Count IV is therefore dismissed, but it is arguably possible to cure the defects in this claim by amendment.

### 4.   **Count VI**

        Plaintiff alleges Haw. Rev. Stat. § 200-9(f) currently requires that boats berthed at AWSBH "regularly navigate[] beyond the confines of the small boat harbor[,]" see Haw. Rev. Stat. § 200-9(a), (f), which he contends means that boats must

31

enter the Ala Wai Canal.  See First Amended Complaint at ¶ 243. Plaintiff alleges that, because of pollution in the Ala Wai Canal, requiring boats to navigate into the canal violates the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq.* ("Clean Water Act"), and 46 U.S.C. § 2302.  According to Plaintiff, the Buoy Run requirement has caused several vessels to either incur major damages or be totally destroyed.  Thus, Plaintiff contends the requirement imposes unreasonable risks upon boat owners.  He states he has contracted staph infections from the polluted water in the canal, and a prop on his boat broke off once when the boat hit a log underwater.  [Id. at ¶¶ 245-56.]  Liberally construed, Plaintiff asserts a § 1983 claim seeks an injunction against the enforcement of § 200-9(f) against Underwood, who is only sued in his individual capacity.[12] See First Amended Complaint at ¶ 28.  Underwood, in his individual capacity, does not have a connection with the enforcement of the allegedly invalid statute.  Count VI therefore fails to state a plausible claim against Underwood, in his individual capacity, and must be dismissed.

---

[12] Even liberally construing Plaintiff's First Amended Complaint, the only other defendants against whom Plaintiff may have been asserting Count VI are the State and the Attorney General, but those defendants have been dismissed with prejudice.

This Court must address whether the dismissal should be without prejudice to Plaintiff reasserting the claim against the appropriate state official, such as possibly Underwood, in his official capacity, and/or Case, in her official capacity.[13] Plaintiff argues the Buoy Run requirement in § 200-9(f) violates 46 U.S.C. § 2302 because forcing boat owners to operate in the polluted Ala Wai Canal is "grossly negligent."  See First Amended Complaint at ¶ 258.  Section 2302 states, in relevant part:

> (a)  A person operating a vessel in a negligent manner or interfering with the safe operation of a vessel, so as to endanger the life, limb, or property of a person is liable to the United States Government for a civil penalty of not more than $5,000 in the case of a recreational vessel, or $25,000 in the case of any other vessel.
>
> (b)  A person operating a vessel in a grossly negligent manner that endangers the life, limb, or property of a person commits a class A misdemeanor.

Even if the § 200-9(f) Buoy Run requirement constitutes negligence under § 2302(a) or gross negligence under § 2302(b), it is the United States Government that would assess civil penalties or prosecute the misdemeanor offense.  For reasons similar to those set forth in the analysis of Plaintiff's claims

---

[13] According to the letterhead of the 7/14/21 Notice and the 8/4/21 Notice, Case is the Chairperson of the Board of Land and Natural Resources, and Underwood is the Administrator of DOBOR. See First Amended Complaint, Exh. K; id., Exh. O (dkt. no. 36-5 at PageID #: 471).

under 18 U.S.C. § 242, Plaintiff cannot enforce § 2302(a) and (b) through a § 1983 claim.  Because it is absolutely clear that Plaintiff cannot cure the defect in his § 2302 claim, that portion of Count VI must be dismissed with prejudice.

To the extent that Count VI is based on the Clean Water Act, Plaintiff appears to argue that, because § 200-9(f) requires boats to enter waters under federal jurisdiction, § 200-9(f) is invalid because the Ala Wai Canal does not meet the standards established in the Clean Water Act.  Neither § 200-9(f) nor the corresponding regulation specifies the precise length of the Buoy Run.  See Haw. Admin. R. § 13-231-45(b) (stating that, before obtaining or renewing a mooring permit, a vessel owner must, among other things, "demonstrate to the department that their vessel is capable of navigating beyond the confines of the harbor and returning under its own power to its assigned mooring/berth").  Plaintiff alleges the Buoy Run requirement consists of navigation to point "approximately half a mile out of the harbor."  See First Amended Complaint at ¶ 243.

The seaward boundaries of the State of Hawai`i extend three miles from the coastline.  See 43 U.S.C. § 1312.  Thus, the waters that boat owners must navigate to obtain or renew an AWSBH mooring permit are within State boundaries, and the Clean Water Act does not apply.  See 33 U.S.C. § 1251(a) ("The

objective of this chapter is to restore and maintain the chemical, physical, and biological integrity of **the Nation's waters**." (emphasis added)); § 1251(g) ("It is the policy of Congress that the authority of each State to allocate quantities of water within its jurisdiction shall not be superseded, abrogated or otherwise impaired by this chapter."). Thus, Plaintiff cannot cure the defect in the portion of Count VI based on the Clean Water Act, and that portion of the claim must be dismissed with prejudice.

Liberally construing the First Amended Complaint as a whole, Count VI may be an attempt to raise an as-applied challenge to the current Buoy Run requirement. Plaintiff does not appear to allege that § 200-9(f) and its implementing regulations are unconstitutional, but he appears to argue that the Buoy Run requirement is being used to render certain boat owners, who Defendants deem undesirable, ineligible to renew their AWSBH permits. Plaintiff may be able to cure this portion of Count VI by amending the claim to identify the constitutional rights being violated and by pleading additional factual allegations supporting his position that the manner in which the Buoy Run requirement is being applied violates those rights.

**V.   Qualified Immunity**

Finally, the State Defendants argue Underwood and Wood are entitled to qualified immunity.[14]  The Ninth Circuit has stated:

> Qualified immunity "shields government officials performing discretionary functions from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Scott v. Henrich, 39 F.3d 912, 914 (9th Cir. 1994) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).  When an officer claims qualified immunity, we ask "(1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." Jessop v. City of Fresno, 936 F.3d 937, 940 (9th Cir. 2019) (quoting Lal v. California, 746 F.3d 1112, 1116 (9th Cir. 2014)).  Courts have discretion to decide which of the two prongs "should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).  "Addressing the second prong before the first is especially appropriate where 'a court will rather quickly and easily decide that there was no violation of clearly established law.'"  Jessop, 936 F.3d at 940 (quoting Pearson, 555 U.S. at 239, 129 S. Ct. 808).

Saved Mag. v. Spokane Police Dep't, 19 F.4th 1193, 1198 (9th Cir. 2021).

---

[14] The State Defendants also present this argument as to Moriwaki and the Attorney General, but it is not necessary to address the argument as to those defendants, because Plaintiff's claims against those defendants have been dismissed with prejudice.

As to the claims against Underwood and Wood that this Court has concluded may be cured by amendment, this Court declines to address the State Defendants' qualified immunity argument at this time because Plaintiff's amendments to those claims may also affect the qualified immunity analysis.  To the extent that the State Defendants seek dismissal of those claims, with prejudice, based on qualified immunity, the Motion is denied.  The denial is without prejudice to them reasserting qualified immunity at the appropriate time.

As to the one claim against Underwood that this Court has concluded states a plausible claim - the portion of Count I based on the July 21, 2021 seizure - Plaintiff has sufficiently pled factual allegations to plausibly support his position that his right to procedural due process was violated.  Further, the right to procedural due process associated with a state's seizure of property is well established.  See, e.g., Clement, 518 F.3d at 1093-94 (discussing notice and hearing requirements).  Underwood therefore is not entitled to dismissal, based on qualified immunity, of the portion of Count I that arises from the July 21, 2021 seizure.  The denial of the Motion as to this claim is without prejudice to Underwood raising the issue of qualified immunity at summary judgment or at trial, if warranted by the evidence.

## **CONCLUSION**

For the foregoing reasons, the State Defendants'

February 26, 2022 Motion to Dismiss [036] First Amended

Complaint Filed February 11, 2022 is HEREBY GRANTED IN PART AND

DENIED IN PART.  Specifically, the Court rules as follows:

-the Motion is DENIED as to the portion of Count I that asserts
    a claim against Underwood based on the July 21, 2021
    seizure;

-the Motion is DENIED as unnecessary, to the extent that it
    seeks dismissal with prejudice of claims against DLNR and
    DOCARE because those entities are not named as defendants
    in the First Amended Complaint;

-the Motion is DENIED as unnecessary, to the extent that it
    seeks dismissal with prejudice, based on Eleventh Amendment
    immunity, of claims against the Governor, Case, Underwood,
    Redulla, Fujioka, and Moriwaki, in their official
    capacities, because those officials are not named as
    defendants in the First Amended Complaint;

-the Motion is DENIED WITHOUT PREJUDICE as to the State
    Defendants' request to dismiss all claims against Wood
    based on legislative immunity and all claims seeking
    monetary relief against Underwood and Wood, based on
    qualified immunity;

-the Motion is GRANTED, insofar as Plaintiff's fraud claim, RICO
    civil conspiracy claim, negligence claim, NIED claim, and
    IIED claim in the original Complaint are DISMISSED WITH
    PREJUDICE because Plaintiff did not reallege those claims
    in the First Amended Complaint;

-the Motion is GRANTED, insofar as (1) the First Amended
    Complaint's claims against the Attorney General, (2) the
    claims against Moriwaki, (3) the claims asserted under 18
    U.S.C. § 242, (4) the portion of Count III asserted against
    Wood, and (5) the portion of Count VI asserted under 46
    U.S.C. § 2302 are DISMISSED WITH PREJUDICE; and

-the Motion is GRANTED IN PART AND DENIED IN PART, insofar as all of Plaintiff's claims in the First Amended Complaint not listed above are DISMISSED WITHOUT PREJUDICE.

Plaintiff is granted leave to file a second amended complaint by **June 30, 2022.**  The second amended complaint must only include: the one claim in the First Amended Complaint that survives the instant Motion; and the claims that has been dismissed without prejudice in this Order.  Plaintiff does not have leave to add any new parties, new claims, or new theories of liability.  If Plaintiff wishes to add new parties, claims, or theories of liability, he is directed to file the second amended complaint, consistent with this Order, and to file a separate motion seeking leave to file a third amended complaint. The motion for leave would be considered by the magistrate judge in the normal course.

Plaintiff must include all of the factual allegations and claims that he wishes to assert in the second amended complaint, even if he previously included them in the original Complaint or the First Amended Complaint.  In other words, he cannot incorporate any part of the Complaint or the First Amended Complaint into the second amended complaint by merely referring to that part of the prior version of the complaint.

Plaintiff is cautioned that, if he fails to file his second amended complaint by **June 30, 2022,** the claims that were dismissed without prejudice in this Order will be dismissed with

39

prejudice, and this case will proceed only as to the one claim that remains in the First Amended Complaint.  Plaintiff is also cautioned that, if he files a timely second amended complaint but fails to cure the defects in his claims that are identified in this Order, those claims may be dismissed with prejudice.

Because there are no remaining claims against the Attorney General and Senator Sharon Moriwaki, the Clerk's Office is DIRECTED to terminate them as parties on **June 15, 2022**, unless a timely motion for reconsideration of this Order is filed.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 31, 2022.



/s/ Leslie E. Kobayashi

Leslie E. Kobayashi
United States District Judge

**SAM MONET VS. STATE OF HAWAII, ET AL; CV 21-00368 LEK-KJM; ORDER GRANTING IN PART AND DENYING IN PART THE STATE DEFENDANTS' MOTION TO DISMISS [036] FIRST AMENDED COMPLAINT FILED FEBRUARY 11, 2022**